[1] This is an action for damages arising out of the injuries plaintiff received when she fell in a skating rink. There was a verdict and judgment against the operator of the rink but the court thereafter sustained the defendant's motion for a judgment in accordance with the motion for a directed verdict and, setting aside the verdict and judgment, entered a new judgment in favor of the defendant. From the judgment so entered the plaintiff appeals.
[2] The plaintiff, a young lady nineteen years of age, went to the Arena Roller Rink in St. Louis to spend a Sunday afternoon skating. The rink was admittedly owned and operated by the defendant. It was rectangular in shape and of sufficient size to accommodate 1,000 or 1200 skaters but the total attendance on this particular Sunday was about 690. In the center of the floor was a space for skaters who wished to do turns or skate backward. This part was indicated by a black line on the floor and regular skating was done outside of the part enclosed by the black line.
[3] Plaintiff testified that she was skating with a boy named Billy Edwards and that they were holding hands and going around the outside portion of the skating floor. As they proceeded in this fashion they came up behind two little girls who were skating very slowly ahead of them and in order to pass the girls they released hands *Page 581 
and separated with Billy going to the left and plaintiff going to the right. They had executed this and were about to join hands again when a boy bumped into plaintiff on her right side and she was caused to fall on her left wrist which was fractured by the fall. She did not know the boy who collided with her and she saw him for the first time momentarily after the occurrence.
[4] The plaintiff had been skating for an hour and a half before the fall and had experienced no difficulty with the crowd and no individual skater had annoyed her in any way. She glanced back over her shoulder before swinging out to pass the children in front of her but saw no one and thought the way was clear. She has no explanation of how the boy happened to bump into her.
[5] Defendant employed from two to four guards to keep order in the rink, the number depending upon the size of the crowd present, and plaintiff stated that she had seen a guard stop men and girls who were skating faster than they should or were not complying with the rules of the rink.
[6] Her skating companion, Billy Edwards, who was fourteen years of age at the time plaintiff was injured, corroborated her testimony up to the point where he told of them separating to pass the children ahead. However, he did not see the boy bump into the plaintiff but he did see the plaintiff as she was falling. He, too, had seen the guards and saw them keeping order. Billy said that he had seen the boy who bumped into plaintiff off and on for the whole time that he had been skating and that he noticed the boy because he had bushy black hair and was wearing some striped pants that the witness did not like. He said that the boy had been skating around fast and zigzagging in and out and trying to show off, but that he had never seen him bump into anybody.
[7] The defendant moved for a directed verdict at the close of plaintiff's case and after the motion was overruled called to the stand the manager of the rink and two guards who were on duty the day of plaintiff's fall. They had not witnessed the incident complained of and their testimony was devoted to the method employed in controlling the skaters on the floor and keeping order among the skaters.
[8] Again at the close of all of the evidence the defendant unsuccessfully moved for a directed verdict and the case was submitted to the jury which found for the plaintiff. After the verdict was returned and judgment entered the defendant moved to set it aside and to enter a judgment for the defendant. In accordance with Section 847.113, R.S.Mo., Mo.R.S.A. § 847.113, the court sustained the motion and entered a judgment for the defendant as if the requested verdict had been directed. The grounds stated by the court for so doing were as follows:
[9] "1. That the Court erred in overruling and denying defendant's motion made at the close of plaintiff's evidence, and erred in overruling and denying defendant's motion made at the close of all of the evidence for a directed verdict in favor of defendant.
[10] "2. That the evidence wholly failed and was insufficient to show any actionable negligence on the part of defendant.
[11] "3. That the evidence wholly failed to support any charge of negligence contained in plaintiff's petition.
[12] "4. That the evidence demonstrated conclusively that plaintiff's injuries and damages resulted solely from her own acts and solely from her own failure to exercise ordinary care."
[13] The appellant contends that she made a submissible case because prior to the time that she was struck by the boy he was conducting himself in a manner which was likely to cause injury to other skaters and that the defendant in the exercise of ordinary care should have discovered the conduct and stopped it.
[14] The plaintiff relies upon Murphy v. Winter Garden Ice Co., Mo.App., 280 S.W. 444, 446. In that case two young men were skating around a rink together, attempting to push, shove and trip different girls. They had been pointed out to a guard by one of the skaters who told him of their action and informed him that they *Page 582 
were apt to hurt some one. Nothing was done about the young men whose conduct had been noted by the girl who complained and by two others. The boys pushed the plaintiff, causing her to fall and suffer resulting injuries. In passing upon the question of the sufficiency of the evidence to make a case submissible to the jury this court stated: "When the conduct of the two young men was of such nature as to attract the attention of plaintiff, one of her companions and the young lady who registered the complaint, we think it was clearly for the jury to determine whether it should have been noticeable to defendant's five attendants on duty at the time. Nor can we say that no standard of care by which defendant's duty could be measured was shown, because ordinary care is always a relative term, and in every case must be determined by what the conduct of an ordinarily prudent person would have been under the same or similar circumstances. In fact it has been expressly held that the care required of persons engaged in the business of providing public amusements is care commensurate with the circumstances of the situation to protect their patrons against injury."
[15] The difference between that case and the case under consideration is that in Murphy v. Winter Garden Ice Company boisterous and rowdylike acts were noticeably being committed by the two young men for some time before the plaintiff was hurt by them, while in the case under consideration the evidence falls short of proving any act which was likely to cause harm to other patrons of the rink by the boy who struck the plaintiff.
[16] The only witness who had seen him before he collided with the plaintiff was her fourteen-year old skating partner and he was not attracted to the boy by reason of anything he was doing but because he was wearing striped pants that the witness did not like. The witness stated that after his attention was thus attracted by the boy's attire he noticed he was skating fast, "zigzagging and showing off", but he also stated that he had not seen him bump into any other skaters. There is no evidence that the unknown boy's conduct was in any way dangerous to other skaters prior to his collision with the plaintiff.
[17] The proprietor of a place of amusement is not an insurer of the safety of invitees and those who patronize the place assume the risks ordinarily incident to the sport or game in progress. Olds v. St. Louis National Baseball Club, 232 Mo.App. 897,104 S.W.2d 746; Grimes v. American League Baseball Co., Mo.App., 78 S.W.2d 520; Brummerhoff v. St. Louis National Baseball Club, Mo.App., 149 S.W.2d 382.
[18] Falling and colliding with other skaters is not an extraordinary occurrence for those indulging in that form of exercise. One who skates assumes those risks and the proprietor of a skating rink is not liable for acts of third persons that bring about such mishaps unless he fails to use ordinary care to protect his patrons. The defendant did not fail to exercise the required degree of care unless it knew or by the exercise of ordinary care should have known that the third person was acting in a manner likely to cause harm to others in time to have stopped such conduct before plaintiff was injured. Hughes v. St. Louis National League Baseball Club, Mo.App., 218 S.W.2d 632.
[19] Since there was no proof that the defendant knew of any dangerous conduct or that there was any dangerous conduct that it should have known of if it had been exercising ordinary care, the court properly held that the evidence was not sufficient and that the jury should have been directed to return a verdict in favor of the defendant. Since this is determinative of the case, the other points raised by plaintiff need not be considered.
[20] It is the recommendation of the Commissioner that the judgment for the defendant be affirmed.