**Virginia NIEMCZYK, Appellant,**

v.

**Sue BURLESON, Respondent.**

**No. 10065.**

Missouri Court of Appeals,
Springfield District.

June 29, 1976.

James R. Robison, Robison & Blanton, Sikeston, for appellant.

William Clayton Vandivort, Hux & Green, Sikeston, for respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Plaintiff was injured while participating in a softball game in Bell City, Missouri. Defendant was the shortstop on the opposing team. As plaintiff, a base runner, was attempting to advance from first base to second base, defendant ran across the infield and collided with plaintiff in the base path.

The petition is grounded on negligence. There is no claim of intentional misconduct on the part of the defendant.

The trial court agreed with defendant that the petition failed "to state a claim upon which relief can be granted," Rule 55.27(a)(6), and sustained defendant's motion to dismiss which attacked the petition on that ground. Plaintiff appeals.

The petition alleged that on July 8, 1974, plaintiff, as a member of a team from Bell City, and defendant, as a member of a team from Fisk, were participants in a softball game. Paragraph 3 of the petition alleged that the collision (and defendant's resultant injuries and damages) was caused by the following:

3(a) Defendant moved into a position in the baseline where she knew or by the exercise of ordinary care should have known that plaintiff was running and was in such a position that a collision was imminent;

(b) Defendant attempted to block the baseline with her body at a point on the field where a defensive player had no right to be and where plaintiff was entitled to run without interference from defensive players;

(c) Defendant knew or by the exercise of ordinary care should have known that a base runner between first base and second base would expect the baseline to be open and clear and defendant then negligently and carelessly blocked that baseline in such a manner and at a time and place when plaintiff was running so fast that there was not sufficient time for her to avoid the collision.

(d) Under the rules of softball, an advancing base runner has the right-of-way in the base path and defendant negligently and carelessly violated the rules by blocking the base path at a time and place where by the exercise of ordinary care, she should have known such conduct would result in a collision.

It is well known that participation in various forms of athletics is widespread throughout this nation. Yet there are remarkably few reported cases which involve personal injuries sustained by a participant during the course of the game for which tort liability is sought to be imposed upon another participant. See 7 A.L.R.2d 704 ["Liability for injury to or death of participant in game or contest"; cases involving coparticipants appear at p. 714.] See also 11 N.C.C.A.4th 6 (Case note: Injuries to Participants in Sporting Events) at p. 62; 65A C.J.S. Negligence § 174(6), p. 302.

"A voluntary participant in any lawful game, sport, or contest, in legal contemplation by the fact of his participation, assumes all risks incidental to the particular game, sport, or contest which are obvious and foreseeable. But he does not assume an extraordinary risk which is not normally incident to the game, sport, or amusement activity unless he knows about it and voluntarily assumes it." 4 Am.Jur.2d Amusements and Exhibitions § 98, p. 226.

Cases in which a player of softball[1] or baseball sued another player for personal injuries sustained by the plaintiff during the course of the game include *Gaspard v. Grain Dealers Mut. Ins. Co.,* 131 So.2d 831 (La.App.1961); *Benedetto v. Travelers Ins.*

---

1. "Basically, the fundamentals of softball are the same as those of baseball. Batting and fielding strategies are similar. But since the game is played on a much smaller area the action is much faster. . . . [T]he rules of softball differ from those of baseball in that the playing field and diamond are smaller, the bat is shorter and lighter, the ball heavier and larger, and the game seven innings instead of nine. The chief difference in the pitching rules is that in softball the ball is delivered in an underhand motion to the batter with a follow-through of the hand and wrist past a straight line of the body before releasing the ball . . ." Encyclopaedia Britannica, Micropaedia, 15th Edition, Vol. IX, p. 323.

*Co.,* 172 So.2d 354 (La.App.1965); *Tavernier v. Maes,* 242 Cal.App.2d 532, 51 Cal.Rptr. 575, (1st Dist. 1966); and *Gordon v. Deerpark Sch. Dist. No. 414,* 71 Wash.2d 119, 426 P.2d 824 (1967).

*Gaspard, Benedetto,* and *Gordon* involve injuries sustained by a flying bat let loose by the defendant. In *Gaspard,* the trial court, sitting without a jury, found for the defendant. The appellate court, in affirming the result, pointed out that baseball "is a strenuous game involving danger to both players and spectators" and that the injury resulted from a risk inherent in the game in which plaintiff had voluntarily participated. In *Benedetto,* also a non-jury action, the trial court found in favor of the plaintiff but this was reversed on appeal. The appellate court found from the evidence that there was no negligence on the part of the batter but that "if such negligence did in fact exist [plaintiff] had assumed the risk or was guilty of contributory negligence." In *Gordon,* the negligence of the batter was held to be a jury issue. In *Tavernier,* defendant was a base runner who slid into plaintiff at second base. A judgment in favor of the defendant was affirmed, although the court, in dictum, indicated that the plaintiff may have made a submissible case in view of the informality of the game, raising a question for the jury whether "a participant could be expected to slide" or whether "defendant's slide was of a type that exposed plaintiff to a risk of a magnitude which he could not have anticipated."

Baseball or softball cases, against defendants other than the coparticipant but involving the latter's conduct, include *Mann v. Nutrilite, Inc.,* 136 Cal.App.2d 729, 289 P.2d 282 (1955), (plaintiff struck by thrown ball; no submissible case), *McGee v. Board of Education of City of New York,* 16 A.D.2d 99, 226 N.Y.S.2d 329 (1962), (plaintiff struck by thrown ball; no submissible case), and *Dudley v. William Penn College,* 219 N.W.2d 484 (Iowa 1974), (plaintiff struck by foul ball; defendant's verdict affirmed).

It is the theme of the foregoing cases that a voluntary participant in a baseball or softball game assumes the risks ordinarily incident thereto and only in exceptional circumstances may he recover from a coparticipant for injuries unintentionally caused by the latter.

Restatement Torts 2d § 50, comment b, p. 86 (1965) states, in relevant part:

"Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill. . . . ."

Missouri plaintiffs, injured while participating in a sport, encounter certain principles which impede, but may not always totally obstruct, their paths to success.

A participant in a sport accepts certain "hazards or dangers, those that reasonably inhere in the sport so far as they are obvious and usually incident to the game." *Perkins v. Byrnes,* 364 Mo. 849, 269 S.W.2d 52, 53[2] (1954) (a swimming case).

In *Schamel v. St. Louis Arena Corp.,* 324 S.W.2d 375 (Mo.App.1959), a skating rink case, the court said at p. 378[2]: "[Plaintiff] assumed risks that were inherent in the sport or amusement in which she was engaged, such as falls or collisions with other skaters brought about by her own or other skaters *lack of skill or clumsiness.* Such things are not *extraordinary* occurrences in skating rinks . . . .. But she did not assume any *extraordinary* risks caused by the obvious *misconduct* of other patrons which could have been detected and controlled by the defendant." (Emphasis added)

Another skating rink case contains this language: "Plaintiff, being a voluntary participant in (what many people consider to be) a sport, assumed the ordinary risks inherent in such activity, whether from *accident, mischance or inadvertence,* but not such risks as are associated with the *negligence* of the proprietor." (Emphasis added)

*Humbyrd v. Spurlock,* 345 S.W.2d 499, 502[4] (Mo.App.1961). See also *Reay v. Reorganization Inv. Co.,* 224 S.W.2d 580, 582[2, 3] (Mo.App.1949) to the effect that falling and colliding with other skaters is not "an extraordinary occurrence for those indulging in that form of exercise."

In *Keaton v. Good,* 350 S.W.2d 119 (Mo. App.1961), a horse racing case, it is said that a participant in that sport "assumed the ordinary risks inherent in the activity in which he was engaged  .  .  .  ." In *Kungle v. Austin,* 380 S.W.2d 354, 359[4] (Mo. 1964), a trampoline case, it is said: "One who takes part in such a sport accepts the dangers that inhere in it so far as they are *obvious* and *necessary,* just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball." (Emphasis added)

The doctrine of assumption of risk, an affirmative defense (Rule 55.08 V.A.M.R.), has been characterized as "an extremely doubtful defense under our recent cases." *McCormick v. Smith,* 459 S.W.2d 272, 274 (Mo.1970). Its "viability in Missouri negligence cases" has been questioned. *Ballew v. Schlotzhauer,* 492 S.W.2d 774, 777 (Mo. 1973). For discussion of the assumption of risk doctrine and the distinction between it and contributory negligence, see *Turpin v. Shoemaker,* 427 S.W.2d 485 (Mo.1968).

Though the doctrine of assumption of risk may have a short life expectancy in Missouri, it has not yet expired, and this court has held that "a pleader may literally plead himself out of court, and when facts constituting a defense affirmatively appear upon the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer." *Household Finance Corp. v. Avery,* 476 S.W.2d 165, 168[6] (Mo.App. 1972).

Some appellate decisions contain litany to the effect that a person does not assume the risk of another person's negligence but our supreme court has stated that "in many negligence cases assumption of risk may defeat a claim originating in a charge of negligence" and that "plaintiff is mistaken in urging that the doctrine of assumption of risk falls out of every case where it is shown that defendant is negligent." *Terry v. Boss Hotels, Inc.,* 376 S.W.2d 239, 249 (Mo.1964). In support of the foregoing, the court cited *Reay, Schamel* and *Humbyrd,* all supra, as well as cases brought by baseball spectators and golf spectators.

In cases such as the one at bar, the very fact that the injury was sustained during the course of a game voluntarily engaged in by plaintiff and defendant materially affects the manner in which the actionability of the latter's conduct is to be weighed. Acts or omissions which may constitute negligence off the playing field may not be such when taking place upon it.

"Negligence depends upon the surrounding circumstances, as well as the particular conduct involved, because an act or omission which would clearly be negligent in some circumstances might not be negligent in other circumstances or surroundings." *Zuber v. Clarkson Const. Co.,* 363 Mo. 352, 251 S.W.2d 52, 55[3] (1952).

■ "Whether a man's acts in a particular case constitutes negligence must be judged by the concomitant circumstances and his environment must be taken into account." *Tharp v. Monsees,* 327 S.W.2d 889, 893[3] (Mo. banc 1959). While negligence consists of a failure to use ordinary care to avoid injury to others, ordinary care is a relative term and its exercise requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances. *Stumpf v. Panhandle Eastern Pipeline Co.,* 354 Mo. 208, 189 S.W.2d 223, 228[12] (1945).

■ Accordingly, whether one player's conduct, causing injury to another, constitutes actionable negligence hinges upon the facts of the individual case. Material factors include the specific game involved, the ages and physical attributes of the participants, their respective skills at the game and their knowledge of its rules and customs, their status as amateurs or professionals, the type of risks which inhere in the game and those which are outside the realm

of reasonable anticipation, the presence or absence of protective uniforms or equipment, the degree of zest with which the game is being played, and doubtless others.

"Generally, the participants in an athletic event are held to have assumed the risks of injury normally associated with the sport . . . Players, coaches, managers, referees and others who, in one way or another, voluntarily participate must accept the risks to which their roles expose them. Of course, this is not to say that actionable negligence can never be committed on a playing field. Considering the skill of the players, the rules and nature of the particular game, and risks which normally attend it, a participant's conduct may amount to such careless disregard for the safety of others as to create risks not fairly assumed. But it is nevertheless true that what the scorekeeper may record as an 'error' is not the equivalent, in law, of negligence." *McGee v. Board of Education of City of New York,* 226 N.Y.S.2d 329, 331 (1962).

Whether or not the petition states a claim rests on the sufficiency of any or all of the four subparagraphs of paragraph 3 to plead negligence, the adequacy of the other portions of the pleading not being attacked. Scrutiny of those allegations must be conducted in light of familiar principles.

■ Rule 55.05 V.A.M.R. requires the petition to set forth "a short and plain statement of the *facts*" (emphasis added) showing that the plaintiff is entitled to relief. "All pleadings shall be so construed as to do substantial justice." Rule 55.24. The averments are to be given a liberal construction and the plaintiff is entitled to the benefit of inferences reasonably arising from the facts stated. *Cady v. Hartford A. & I. Co.,* 439 S.W.2d 483, 485[1] (Mo.1969).

■ Defendant's motion admits, for the purpose of the motion, all facts well pleaded in the petition and it must be construed "in a light favorable to [the] plaintiff." *McDonough v. Aylward,* 500 S.W.2d 721, 722[1] (Mo.1973).

■ If the allegations invoke principles of substantive law which *may* entitle the pleader to relief, the petition is not to be dismissed. *Laclede Gas Co. v. Hampton Speedway Co.,* 520 S.W.2d 625, 630[4] (Mo. App.1975); *Kersey v. Harbin,* 531 S.W.2d 76, 79[1, 3] (Mo.App.1975); *Boyer v. Guidicy Marble, Terrazzo & Tile Co.,* 246 S.W.2d 742, 744[1] (Mo.1952).

Although Rule 55.05 requires a petition to contain a short and plain statement of the *facts*,[2] Missouri appellate courts have demonstrated liberality in assessing the sufficiency of negligence petitions.

■ Certain words,[3] when unsupported by pleaded facts to show their basis, have been branded as conclusions of the pleader rather than statements of fact, and they are not to be considered in determining whether a claim has been stated. The word "negligently" has not been so lightly ignored. When a petition specifies the act complained of "with sufficient certainty to advise the defendant of the charge he is to meet and then avers that the act was negligently done," *Kersey,* supra, 531 S.W.2d at p. 79, the petition is sufficient. See also *Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 222 S.W.2d 87, 92 (1949); *Zichler v. St. Louis Public Service Co.,* 332 Mo. 902, 59 S.W.2d 654, 657[6] (1933).

---

**2.** Compare Rule 8(a)(2), Federal Rules of Civil Procedure, which requires "a short and plain statement of the *claim*" showing that the pleader is entitled to relief. See Wright & Miller, Federal Practice & Procedure, Vol. 5, § 1249, p. 227. See also Form 9, Complaint for Negligence, Wright & Miller, Federal Practice & Procedure. Vol. 12, appendix A, p. 309, where the allegation "defendant negligently drove a motor vehicle against plaintiff who was then crossing [the named] highway," coupled with allegations of causation and injury, is sufficient.

**3.** "Evil, improper, unlawful," *State ex rel. Aimonette v. C. & R. Heating and Serv. Co.,* 475 S.W.2d 409, 413[6] (Mo.App.1971); "Willful and malicious," *Pretsky v. S.W. Bell Tel. Co.,* 396 S.W.2d 566, 569[1] (Mo.1965); "Illegal, invalid, void, unlawful, unconstitutional, improper, arbitrary, and capricious," *State ex rel. State Tax Commission v. Briscoe,* 451 S.W.2d 1, 5[9] (Mo. banc 1970); "Bad faith," *Western Robidoux P. & L. Co. v. Missouri Hwy. Com'n,* 498 S.W.2d 745, 749[11] (Mo.1973).

For cases upholding the sufficiency of a negligence petition containing only bare or skeletal allegations of negligence see *State v. Haid,* 328 Mo. 807, 41 S.W.2d 789 (1931); *State v. Koerner,* 181 S.W.2d 1004 (Mo.App. 1944); *Stephens v. Kansas City Gas Co.,* 354 Mo. 835, 191 S.W.2d 601, 604 (1946); *Holtz v. Daniel Hamm Drayage Co.,* 357 Mo. 538, 209 S.W.2d 883 (1948); *Phillips v. Carroll,* 379 S.W.2d 143 (Mo.App.1964); *State ex rel. Birdsboro Corp. v. Kimberlin,* 461 S.W.2d 292 (Mo.App.1970); *Welch v. Thompson,* 357 Mo. 703, 210 S.W.2d 79, 83[8] (1948). In *Welch* it is said: "A general allegation of negligence is good unless it is attacked for want of being sufficiently definite." Although in some of these cases the sufficiency of the petition was not attacked until after verdict, *Koerner* points out that "a verdict will not cure a petition which wholly fails to state a cause of action."

It is possible that the task of the trial court, and that of this court, would have been simplified if the defendant had filed a motion for a more definite statement, Rule 55.27(d), or if the plaintiff, after the trial court's adverse ruling, had sought and obtained leave to amend, Rule 55.33. But neither was done.

■ Although the case may be a close one, this court has concluded that the trial court erred in holding the petition to be fatally defective. This court holds that paragraph 3(c) of the petition is an adequate assignment of negligence to withstand a motion to dismiss directed to its sufficiency.

It should be noted that paragraph 3(c) contains the muscular adverbs "negligently and carelessly," and those words are accompanied by a description of the conduct complained of, "with sufficient certainty to advise the defendant of the charge he is to meet," *Kersey,* supra. What evidence may be adduced in support of the adverbs is, at this juncture, academic. "In judging the sufficiency of a petition in this regard, we are not concerned with what the evidence may prove in the case." *Empiregas, Inc. of Noel v. Hoover Ball & Bearing Co.,* 507 S.W.2d 657, 661[7] (Mo.1974).

This court, though conscious of the evidentiary difficulties confronting the plaintiff in a case such as this, has given the petition the liberal construction which the foregoing authorities require. Any doubt, if at all reasonable, with regard to the sufficiency of the petition, should be, and now is, resolved in favor of the plaintiff.

This conclusion renders it unnecessary for this court to consider the adequacy of paragraphs 3(a) or 3(b), neither of which contains the adverbial elixir. Nor is it necessary to decide the adequacy of paragraph 3(d) which, though containing the two adverbs, applies them, at least grammatically, to a violation of the rules rather than to the conduct described.

The judgment is reversed and the cause remanded with directions to the trial court to reinstate the petition.

It is so ordered.

HOGAN, J., concurs.

BILLINGS, C. J., dissents in separate dissenting opinion filed.

BILLINGS, Chief Judge (dissenting).

I respectfully dissent.

In my view, no doubt influenced somewhat by permanent scars and broken bones acquired in yester-year on baseball and softball diamonds, in the absence of allegations of *intentional* wrongdoing by the defendant, and resultant injury to the plaintiff, the petition fails to state a cause of action against the defendant.

As the principal opinion observed, one may plead himself out of court. The collision of which plaintiff complains is inherent in baseball or softball. I would hold defendant's alleged conduct was a risk which is obvious to a participant, foreseeable to a baserunner, not an extra-ordinary happening during the course of a game, and, simply a risk that is an incident to participation in a baseball or softball game.